Blake BRYANT *v.* STATE of Arkansas

CA CR 05-405                                       231 S.W.3d 91

Court of Appeals of Arkansas
Opinion delivered March 8, 2006

*Patrick J. Benca* and *John Wesley Hall, Jr.*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Misty Wilson Borkowski*, Ass't Att'y Gen., for appellee.

WENDELL L. GRIFFEN, Judge. Blake Bryant appeals from several drug convictions, for which he a received a total of twenty-five years in the Arkansas Department of Correction. He argues that the trial court erred by denying his request for a mental evaluation. We determine that this case is guided by our supreme court's opinion in *Hudson v. State*, 303 Ark. 640-A, 801 S.W.2d 48 (1991) (supplemental opinion on denial of rehearing), and affirm appellant's convictions.

The State filed a criminal information on December 18, 2003, charging appellant with six offenses: possession of crystal methamphetamine with intent to deliver, simultaneous possession of drugs and firearms, possession of marijuana with intent to deliver, possession of drug paraphernalia, maintaining a drug premises, and felon in possession of a firearm. The State sought an enhanced sentence because appellant had a prior felony convic-

tion. On June 30, 2004, appellant's counsel filed a motion to withdraw as counsel, stating that appellant wanted him to pursue a defense that was not in appellant's best interest and that appellant had accused him of being "in bed with the prosecutor" and part of "the good old boy network." In paragraph three of the motion, counsel stated:

> That current counsel verily believes that defendant suffers from a mental disease or defect and fails to comprehend both the evidence the State has against him and the consequences of that evidence when presented to a jury. Specifically, the defendant initially accepted a plea agreement and suddenly advised current counsel on the day the plea was to be given that he was rejecting it. As current counsel explained the effect of the evidence for at least the third time to defendant, Mr. Bryant seemed confused, disoriented, repeated the same scenario of questions, and the same accusations that current counsel was part of a conspiracy against him. Counsel requests that the defendant undergo a mental evaluation to determine whether or not he suffers from a mental disease or defect that compromises his ability to appreciate the evidence the State has against him and the possible penalties in the event he is convicted.

The State responded to this allegation by denying that appellant suffered from a mental disease or defect or that he failed to comprehend the evidence against him or the consequences of said evidence. It further contended that the motion was filed to delay the trial.

At a pre-trial hearing on June 21, 2004, appellant's counsel remarked that appellant was offered a plea agreement. Appellant rejected the offer, and his counsel sought to make a record regarding what appellant had been advised regarding the evidence the State had against him and the potential sentence for each charge. Upon inquiry by the court, appellant stated that he understood the potential sentence he could receive on each charge (up to eighty years on two of the charges, twenty years on two of the charges, and twelve years on two of the charges). He acknowledged that the State had offered him fifteen years with an additional five years suspended imposition of sentence on the Y felonies, with the remaining counts *nol prossed*. Appellant indicated his desire to reject the plea "at this time." When reminded that the State intended to withdraw the offer if not accepted that day, appellant rejected the offer.

Another hearing was held on July 1, 2004. Appellant's counsel told the court that he had suggested a certain defense to appellant but that the appellant's preference regarding the proposed defense changed every time he conferred with appellant. He stated that appellant disagreed with his advice and challenged his abilities and knowledge. Counsel continued to assert that appellant did not comprehend the proceedings against him. The State argued that appellant presented no basis for believing that he had a mental disease or defect and reasserted its belief that the motion was merely for the purposes of delay. Regarding appellant's motion for a mental examination, the court stated that appellant understood everything during the previous hearing and indicated "in a very lucid manner" that he understood the proceedings against him and that he was exercising his right to a jury trial. The court agreed with the State that appellant was merely attempting to delay trial.[1]

The court questioned appellant under oath. Appellant acknowledged that the State offered him the same deal that he previously rejected, plus forfeiture of the items seized. Again, he rejected the offer. The court noted that appellant was prepared to accept the State's offer at one time; however, appellant testified that he initially agreed to accept the offer "because [counsel] scared me. I don't know, he, he was talking they going to hang me, they going to fry me and all this[.]" Appellant stated that he also understood that his counsel could not control whether the State offered him a reduced sentence. He testified that he asked his counsel to file several suppression motions and that counsel never did so. Appellant believed that his counsel was attempting to force him to take a plea.[2]

---

[1] A docket entry dated July 1, 2004, states in part, "Motions denied — Court finds the motion filed only for delay, no diligent effort to find evid showing need for mental examination, Def lucidly disc evid, witnesses. . . ."

[2] Appellant also made an additional comment about why he rejected the plea:

One reason being that Mr. Womack instructed me that you hate his guts as an, as an attorney. And I felt like he was trying to, I didn't know if he was trying to tell me to hire another attorney. If he was going to get it took out of this court in Judge Keaton's court when he done just the opposite. He got it took out of Keaton's and put it in your court.

The trial judge stated for the record that she did not hate counsel's guts.

The next day, counsel filed a supplemental motion to withdraw, alleging that appellant verbally assaulted him after the previous day's hearing. Counsel further alleged that ten minutes after the hearing, appellant was in his automobile when counsel attempted to discuss the trial. Appellant "with his window rolled down, red faced, with his teeth clenched and a look of rage in his eyes, cursed and swore at undersigned counsel, verbally threatened counsel, revved the engine of his vehicle, and spun gravel several yards[.]" Counsel believed that appellant wanted to run him over with the vehicle.

Trial was originally scheduled for July 6, 2004; however, it was rescheduled because appellant underwent surgery. Another hearing was held on July 26, 2004. Counsel remained, but he announced that appellant wanted to wait until he was off medication and evaluated by his cardiologist before making any decisions. Counsel indicated his willingness to remain as appellant's counsel, and the court denied his motion to withdraw. However, appellant later retained new counsel, and the court granted appellant's motion to substitute counsel.

Trial was held September 7 and 9, 2004. Appellant's mental state was not made an issue during the trial. The jury found that appellant had been in possession of marijuana but not with intent to deliver; otherwise, the jury found appellant guilty as charged. Appellant was subsequently sentenced to a total of twenty-five years in the Arkansas Department of Correction. This appeal followed. For his sole point on appeal, appellant argues that the trial court erred in finding him fit to proceed at trial based upon its own observations. He contends that he was entitled to a suspension of the proceedings and a mental evaluation, pursuant to Ark. Code Ann. § 5-2-305 (Repl. 2006).

It is well settled that the conviction of a defendant while he is legally incompetent to stand trial violates due process. *Lawrence v. State*, 39 Ark. App. 39, 839 S.W.2d 10 (1992). Arkansas Code Annotated section 5-2-302 (Repl. 2006) expressly prohibits trying a person who lacks the capacity to understand the proceedings against him or to assist effectively in his own defense because of mental disease or defect. A criminal defendant is ordinarily presumed to be mentally competent to stand trial, and the burden to prove otherwise is on the defendant. *Mask v. State*, 314 Ark. 25, 869 S.W.2d 1 (1993). The test of competency to stand trial is whether a defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and

whether he has a rational and factual understanding of the proceedings against him. *Haynes v. State*, 346 Ark. 388, 58 S.W.3d 336 (2001); *Lawrence v. State, supra.*

Arkansas Code Annotated section 5-2-305(a)(1) states that the trial court *shall* immediately suspend proceedings if the defendant files notice that he will put his fitness to proceed in issue or if there is otherwise reason to doubt the defendant's fitness to proceed. Use of the word "shall" makes compliance with a statute mandatory. *See Smith v. State*, 347 Ark. 277, 61 S.W.3d 168 (2001); *Middleton v. Lockhart*, 344 Ark. 572, 43 S.W.3d 113 (2001). Upon suspension of the proceedings, the trial court is required to enter an order directing a mental examination of the defendant under one of the means outlined in the statute. *See* Ark. Code Ann. § 5-2-305(b)(1).[3] This statute is intended to prevent the trial of anyone who is legally incompetent. *Lawrence v. State, supra.* The trial court's determination of the issue is reviewed under the "clearly erroneous" standard. *Hardaway v. State*, 321 Ark. 576, 906 S.W.2d 288 (1995); *Hudson v. State, supra.*

Appellant cites *Kelly v. State*, 80 Ark. App. 126, 91 S.W.3d 526 (2002), for his proposition, "Once a defendant properly invokes the right to a mental examination, the court has no choice." In *Kelly*, the appellant argued that the trial court should have suspended the proceedings after his attorney filed a motion requesting a psychiatric examination.[4] The trial court explicitly found that the appellant provided timely notice of his motion; however, rather than suspending the proceedings, the court pro-

---

[3] Specifically, Ark. Code Ann. § 5-2-305(b)(1) provides:

Upon suspension of further proceedings in the prosecution, the court shall enter an order:

(A) Directing that the defendant undergo examination and observation by one (1) or more qualified psychiatrists or qualified psychologists; or

(B) Appointing one (1) or more qualified psychiatrists not practicing within the Arkansas State Hospital to make an examination and report on the mental condition of the defendant; or

(C) Directing the Director of the Division of Mental Health Services of the Department of Health and Human Services to determine who shall examine and report upon the mental condition of the defendant.

[4] *Kelly* operated under a predecessor of the current statute, which read:

Whenever a defendant charged in circuit court ... (2) Files notice that he will put in issue his fitness to proceed, or there is reason to doubt his fitness to proceed, the

ceeded with a competency hearing. At the hearing, the appellant testified to his prior treatment and receipt of benefits for his mental condition or defect. We observed that the hearing mandated by the statute was required to resolve any contest made regarding the mental evaluation; however, the trial court erred by not giving the appellant an opportunity for an evaluation or to present a report. Appellant received a new trial due to the trial court's failure to suspend the proceedings and order an evaluation.

In arguing that *Kelly* is distinguishable, the State emphasizes the statutory language under subparagraph (a)(1)(D) requiring a "reason to doubt" appellant's competency. It relies heavily on *Lawrence v. State, supra,* where this court found no error in the trial court's refusal to suspend the proceedings and order a mental evaluation. In *Lawrence,* the appellant filed a notice of lack of fitness to proceed five days before trial and requested that he be mentally evaluated based upon his assertion that he could not provide assistance in preparing for trial. Appellant based his assertion on lack of memory of the events surrounding the allegations. The trial court denied the appellant's request for a mental examination, stating that the notice, which spoke only of memory loss as the basis of the incapacity, failed to put the appellant's mental capacity at issue. We affirmed the trial court, noting that amnesia or lack of memory was not a proper basis for finding a defendant incompetent to stand trial. *Id.* (citing *Rector v. State,* 277 Ark. 17, 638 S.W.2d 672 (1982); *Deason v. State,* 263 Ark. 56, 562 S.W.2d 79 (1978)). We further noted that there was nothing else in the record that gave the trial court "reason to doubt" the appellant's fitness so as to trigger the provisions of the statute.

The State also relies on *Hudson v. State, supra,* where the appellant argued that his motion for a psychiatric examination should have been granted. In its original opinion, *Hudson v. State,* 303 Ark. 637, 799 S.W.2d 529 (1990), our supreme court affirmed the trial court's denial of the motion, noting that appellant had failed to file the notice that he intended to rely upon the defense of mental disease or defect. In its supplemental opinion, the court acknowledged that it failed to address the appellant's argument concerning the provision of section 5-2-305 that requires the trial

court, subject to the provisions of §§ 5-2-304 and 5-2-311, shall immediately suspend all further proceedings in the prosecution.

*See Kelly,* 80 Ark. App. at 129-30, 91 S.W.3d at 528.

court to suspend proceedings if there is reason to believe mental disease or defect will become an issue. The supreme court denied appellant's petition for rehearing, noting that it found nothing in the record, outside of comments made by defense counsel, that appellant did not appreciate the seriousness of the charges against him.

■ Similar to the appellant in *Hudson*, appellant put forth no evidence (independent of his former counsel's allegations) to suggest that he lacked an appreciation for the seriousness of the charges against him or an ability to assist his attorney in his defense. Further, the trial court interviewed appellant twice and had the opportunity to assess his lucidity and his familiarity with the potential range of punishment, plea agreement offered by the state, risk that he was running by going to trial, and advice he had been given by counsel. The trial court found that appellant was fit to proceed, and nothing in the record, outside of the comments by former counsel, indicates otherwise. In light of *Hudson v. State*, *supra*, we affirm.

Affirmed.

GLADWIN and NEAL, JJ., agree.