Memorandum Decision
DAVIS, Judge:
{1 Hoyt Brady appeals from the trial court's ruling revoking his probation. We affirm.
12 After pleading guilty to one count of communications fraud and one count of racketeering, both second degree felonies, see Utah Code Ann. §§ 76-10-1608, -1801 (Lex-isNexis 2012), Brady was placed on probation for thirty-six months. The conditions of his probation included paying restitution of $479,123.18 to his victims. On June 14, 2011, nearly one year after Brady entered his guilty plea and was put on probation, the State filed a motion for an order to show cause, arguing that Brady violated the terms of his probation by failing to pay "anything toward his restitution amounts." The trial court granted the motion, and held a hearing on September 9, 2011.
T3 During the hearing, Brady admitted to violating his probation by failing to pay anything toward the restitution, but described his efforts to find a job and his overwhelming financial obligations in an effort to mitigate the impact of his violation. The trial court concluded that Brady's mitigating evidence failed to "show [that he had made] at least a good faith effort to address the restitution" and noted that there were "any number of things" he could have done to satisfy this requirement. Accordingly, the trial court revoked Brady's probation and reinstated his prison sentence. Brady appeals, arguing that the trial court abused its discretion by failing to consider his mitigating evidence, to explicitly find that his probation violation was willful, and to consider alternative means of punishment other than reinstating his prison sentence. Brady alternatively argues that the Order to Show Cause hearing did not comport with the minimum requirements of due process.
14 We review a trial court's decision to revoke probation for an abuse of discretion. State v. Orr, 2005 UT 92, ¶ 9, 127 *780 P.3d 1218. "Probation may not be revoked except upon a hearing in court and a finding that the conditions of probation have been violated." Utah Code Ann. § 77-18-1(12)(a)(ii) (LexisNexis 2012). During a revocation proceeding, "[the defendant may call witnesses, appear and speak in the defendant's own behalf, and present evidence," as well as question witnesses presented by the prosecution. Id. § 77-18-1(12)(d)@ii)-(iv). "After the hearing the court shall make findings of fact," id. § T7i-18-1(12)(e)@), and if a violation is found, the trial court "must determine by a preponderance of the evidence that the violation was willful," State v. Maestas, 2000 UT App 22, ¶ 24, 997 P.2d 314 (citation and internal quotation marks omitted). "[The requirement of willfulness in the context of probation revocation proceedings for failure to pay a court-ordered payment merely requires a finding that the probationer did not make bona fide efforts to meet the conditions of his probation." State v. Archuleta, 812 P.2d 80, 84 (Utah Ct.App.1991). If the trial court determines that a probationer's violation was not willful, the trial court is then required to "consider 'whether adequate alternative methods of punishing the defendant are available"" Orr, 2005 UT 92, ¶ 34, 127 P.3d 1213 (quoting Bearden v. Georgia, 461 U.S. 660, 669, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983)).
I 5 Here, Brady spoke in his own behalf at the hearing to explain that he had been searching for a job for eight to nine hours a day for almost ten months, that his age and the slow housing market-to say nothing of his recent felony convictions-were negatively impacting his search for residential construction work, and that he remained unable to pay restitution after he secured a full-time job in June 2011 because 75% of his earnings were being garnished to pay child support and another restitution obligation. Brady mentioned that he could get a second job and that his brother could lend him $200 a month to pay his restitution in the meantime, though he did not explain why the loan-for-restitution option had not been implemented months earlier.
T6 The trial court acknowledged Brady's mitigating evidence, stating "that these are tough economic times," but was ultimately not convinced that Brady's efforts of the previous twelve months were sufficient "to show at least a good faith effort to address [his] restitution." Specifically, the trial court noted that Brady "could have done any number of 'other things to demonstrate some effort," including finding a second job even if it was just doing handyman work or odd jobs, which in Brady's cireumstance, seems a fair consideration inasmuch as Brady was doing handyman work before he was arrested and, according to a handwritten letter that he sent to the trial court, planned on returning to handyman work, if granted probation. But see Bearden, 461 U.S. at 673, 103 S.Ct. 2064 (rejecting the sentencing court's comments on the availability of odd jobs as evidence of willfulness where the sentencing court made no finding that the probationer had not made bona fide efforts to find work).
17 These comments by the trial court illustrate its implicit finding of willfulness. Brady argues that an explicit finding is mandatory. We disagree.[1] Cf. Orr, 2005 UT 92, ¶ 37, 127 P.3d 1213 (applying the analytical framework used in probation revocation proceedings to a probation extension proceeding, and upholding the trial court's implicit finding of willfulness contained in its order); State v. Brooks, 2012 UT App 34, ¶ 15 & n. 5, 271 P.3d 831 (describing comments made by the trial court during sentencing as an "implicit finding of willful behavior" and acknowledging that this implicit finding was sufficient to satisfy the willfulness finding). Additionally, the trial court could have based a willfulness finding on Brady's comment that his brother was willing to make payments on his behalf while he looked for a second job; this comment implies that Brady could have already been *781 looking for a second job and already paying restitution with his brother's offered money. See Orr, 2005 UT 92, ¶ 34, 127 P.3d 1213 (categorizing a probationer's failure to make bona fide efforts to seek employment or borrow money as willful acts). Further, as the State pointed out at the hearing, Brady could have been paying token amounts-"cents"toward his restitution. See Archuleta, 812 P.2d at 85 (describing the failure to make token payments toward restitution as a willful violation of probation). Thus, the trial court's implicit determination that Brady's violation was willful was not an abuse of discretion, and because of this finding, the trial court was not required to consider alternative punishments before reinstating Brady's prison sentence.
18 Alternatively, Brady argues that the hearing did not comport with the minimum requirements of due process. Specifically, Brady argues that he was not afforded a full opportunity to be heard.[2]
19 "[PJrobation revocation proceedings, which are not criminal in nature and involve only a conditional liberty interest, are entitled only to the minimum requirements of due process." State v. Orr, 2005 UT 92, ¶ 12, 127 P.3d 1213 (footnote, citation, and internal quotation marks omitted); see also id. TT 11, 13-14 (recognizing that "[wlhat constitutes due process ... depends upon the type of proceeding and, more specifically, the nature of the individual interest affected, the extent to which it is affected, the rationality of the connection between legislative means and purpose, [and] the existence of alternative means for effectuating the purpose," and listing what the minimum requirements of due process may entail in any given situation (second alteration in original) (citation and internal quotation marks omitted)). The Utah Code requires the trial court to hold a hearing before a defendant's probation can be revoked and to permit a defendant to speak in his own behalf and present evidence during the hearing. Utah Code Ann. § 77-(d)iv) (LexisNexis 2012); see also id. § (noting that a defendant can waive his right to a hearing). The statute states that probation can be revoked if, after conducting a hearing, the trial court "find[s] that the defendant violated the conditions of probation." Id. § 77-18-1(12)(e)@®).
110 Here, Brady was permitted to speak in his own behalf during the hearing. During the hearing, Brady also offered the court evidence in support of his justifications for violating his probation-a log book in which he recorded the details of his job search and pay stubs to prove that 75% of his wages were already being garnished. As previously determined, the trial court did consider Brady's mitigating evidence, although it did not view the log book or pay stubs and expressed impatience at Brady's attempt to offer the log book as evidence. Nonetheless, we fail to see how this amounted to a violation of Brady's due process rights, especially where he admitted to violating his probation and the trial court considered his mitigating testimony. See id. § Ti-18-1(12)(d); see also Bearden v. Georgia, 461 U.S. 660, 672, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983) ("[In revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay."). Further, the two items of evidence that Brady described do little more than bolster the credibility of the statements that he made in his own behalf, and even when viewing all of that evidence as true, it does not address the grounds on which the trial court ultimately revoked his probation-failure to make even token restitution payments. After the trial court expressed its impatience, Brady offered to get a second job and to start paying restitution with money borrowed from his brother. However, these statements work against Brady as much as they mitigate in his favor because they illustrate additional actions Brady could have taken to enable him to make at least token restitution payments in the year leading up to the State's Motion *782 for an Order to Show Cause. Even excusing Brady's having not found (or perhaps even started looking for) a second job due to factors beyond his control-ie., his age and the difficult job market-Brady offered no reason at the hearing explaining why he did not obtain a loan from his brother sooner, and indeed, he suggested the loan option only after the trial court appeared to become frustrated with him. For all of these reasons, we reject Brady's argument that the hearing did not comport with the minimum requirements of due process and affirm the trial court's revocation of his probation.

. We also reject Brady's argument that the trial court failed to make adequate findings of fact. Under the facts and circumstances of this case, the "transcribed oral finding{(s]" of the trial court satisfied the requirement that the trial court make findings of fact because the transcript of the hearing sufficiently "enable[d] the reviewing court to determine the basis of the district court's decision." See State v. Orr, 2005 UT 92, ¶ 31, 127 P.3d 1213.

. Because of our determinations above that the trial court's oral findings were adequate and that the evidence was sufficient to support the trial court's revocation, we need not address Brady's similar challenges to the findings raised within the alternative argument he presents on appeal. See supra 17 note 1.